353 So.2d 969 (1977)
John A. KYLE, Rosemary Deig, wife of/and George E. Godbey
v.
CITY OF NEW ORLEANS, New Orleans Police Department, "A and B" Insurance Companies, Lieutenant Eugene Fields, Officers Wilson, Bruno, and John Doe.
No. 59683.
Supreme Court of Louisiana.
December 19, 1977.
*970 Leroy J. Falgout, Kenner, for plaintiff-applicant.
Philip S. Brooks, City Atty., Joseph J. Laura, Jr., Freeman R. Matthews, Asst. City Attys., for defendants-respondents.
SANDERS, Chief Justice.
Three New Orleans apartment dwellers shot by police officers during their arrest brought this civil action for damages.
*971 The plaintiffs, John A. Kyle, Rosemary Deig Godbey, and George E. Godbey, sue for damages for pain and suffering, false arrest and imprisonment, and medical expenses. They named the City of New Orleans, New Orleans Police Department, Travelers Insurance Company, Lieutenant Eugene Fields, Detective Charles Miller, Detective Fred Williams, Detective Gerald DeRose, and Detective Lorenzo Knight as defendants. Charity Hospital of Louisiana at New Orleans intervened for medical services rendered to plaintiff Kyle.
The district judge entered judgment for plaintiffs and intervenor against the City of New Orleans and Lieutenant Fields, in solido,[1] and dismissed the claims against the remaining defendants. Substantively, the court found the arrest legal, but the force used in its execution excessive.
The plaintiffs appealed, challenging the legality of the arrest and the quantum awarded. The defendants cast in judgment also appealed, alleging that the force employed in making the arrest was reasonable. The Court of Appeal reversed. Although it upheld the district court's finding the arrest legal, the court held the force used reasonable under the circumstances. La.App., 342 So.2d 1257 (1977).
We granted plaintiffs' application for writs to review the propriety of this judgment. La., 345 So.2d 507 (1977).
The case presents two issues: (1) Are the plaintiffs entitled to damages for false arrest and imprisonment? (2) Did the officers use excessive force in arresting the plaintiffs?

False Arrest and Imprisonment
False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority. Barfield v. Marron, 222 La. 210, 62 So.2d 276 (1952); De Bouchel v. Koss Const. Co., Inc., 177 La. 841, 149 So. 496 (1933); Tillman v. Holsum Bakeries, Inc., La.App., 244 So.2d 681 (1971), writ refused, La., 258 La. 352, 246 So.2d 199 (1971). Thus, if police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment. See Martin v. Magee, 182 La. 263, 161 So. 604 (1935); Cerna v. Rhodes, La.App., 341 So.2d 1157 (1977), writ refused, La., 343 So.2d 1067 (1977); 35 C.J.S. False Imprisonment § 22, p. 649, 650. The law exempts the officers from liability even if the statute upon which they rely is later declared unconstitutional as long as the officers reasonably believed it valid at the time they acted. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Mitchell v. Drake, Ind.App., 360 N.E.2d 195 (1977); McCray v. City of Lake Louisvilla, Ky., 332 S.W.2d 837 (1960).
Louisiana Code of Criminal Procedure Article 213(3) is the authority for the arrests in the instant case. That article provides that an officer may make a warrantless arrest for an offense committed out of his presence if he has "reasonable cause to believe that the person to be arrested has committed an offense. . . ." [2] Reasonable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in the belief that a felony has been committed. State v. Phillips, La., 347 So.2d 206 (1977); State v. Linkletter, La., 345 So.2d 452 (1977); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966).
The following are the facts leading to the plaintiffs' arrests:
*972 On February 19, 1972, a Saturday morning, two white males, masked and armed, robbed the A & P Supermarket on Magazine Street in New Orleans. Witnesses provided police with a general description: one was tall and heavy, and the other shorter and slimmer.
During the investigation, Ralph Lozier, a security guard, told the detectives that another security guard, Kenneth Hodel, knew something about the robbery. Interviews with Lozier and Hodel revealed the following: The Tuesday prior to the robbery, Hodel had dinner with Godbey and Kyle at Kyle's Josephine Street apartment. Hodel was an acquaintance of Godbey's. (Hodel identified Godbey by name to the police, but could only describe Kyle.) Kyle offered to pay Hodel for information concerning the security at the A & P on Magazine Street and for two guns. They told Hodel that they needed the information and guns to rob that store.
On Thursday, during their security patrol, Hodel told Lozier that his friends planned to rob the A & P on Magazine Street that Saturday. He then asked Lozier for two guns and some information concerning the security in that store. (Lozier's wife worked at that A & P.)
Hodel's description of Kyle and Godbey fit the one given of the armed robbers.
The night of the robbery, Hodel led the officers to Kyle's apartment, in the vicinity of the A & P store. Based upon Hodel's and Lozier's statements, the officers arrested the plaintiffs. During the arrests, the plaintiffs sustained gunshot wounds. The Godbeys were booked and incarcerated after receiving medical treatment. However, due to the extensive nature of Kyle's wounds, he remained at Charity Hospital under police guard.
Subsequently, the true perpetrators, two penitentiary escapees, were apprehended in Mobile, Alabama.
Both lower courts found that the officers had reasonable cause to make the warrantless arrests and thus rejected plaintiffs' demands for false arrest and imprisonment damages. We agree. The statements by Hodel and Lozier gave the officers reasonable cause to believe that Kyle and Godbey had robbed the supermarket. Hodel and Lozier were security officers. Their statements corroborated each other. A police check of their prior records revealed no basis for discrediting their statements. Moreover, the descriptions given of the plaintiffs matched those of the armed robbers. Therefore, we hold that the plaintiffs are barred from recovering damages for false arrest and imprisonment since Louisiana Code of Criminal Procedure Article 213(3) authorized the arrest.

Excessive Force
To effectuate an arrest, officers may break open an outer door of a dwelling if they are refused or otherwise obstructed from admittance. However, they must first announce their authority and purpose if such announcement would not imperil the arrest. LSA-C.Cr.P. Art. 224. In addition, Louisiana Code of Criminal Procedure Article 220 provides:
"A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained."
The use of force by law enforcement officers must be tested by the "reasonable force" standard established by this article. The test precludes "clearly inappropriate force." LSA-C.Cr.P. Art. 220, Official Revision Comment (b).
The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result. LSA-C.C. Art. 2320; Picou v. Terrebonne Parish Sheriff's Office, La.App., 343 So.2d 306 (1977), writ refused, La., 345 So.2d 506 (1977); Cheatham v. Lee, La.App., 277 So.2d 513 (1973); Bourque v. Lohr, La.App., 248 So.2d 901 (1971); Taylor v. City of Baton Rouge, La.App., 233 So.2d 325 (1970).
*973 Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case. A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers. Picou v. Terrebonne Parish Sheriff's Office, supra; 6A C.J.S. Arrest § 49(a), p. 112; 6A C.J.S. Assault and Battery § 97, p. 491. The degree of force employed is a factual issue. Picou v. Terrebonne Parish Sheriff's Office, supra; Castriotta v. Cronvich, La.App., 277 So.2d 744 (1973); Espenan v. Carona, La.App., 179 So. 119 (1938). As such, the trial court's finding is entitled to great weight. Canter v. Koehring Co., La., 283 So.2d 716 (1973).
Several factors to be considered in making this determination are the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment. See Picou v. Terrebonne Parish Sheriff's Office, supra; Logan v. Swift, La.App., 327 So.2d 168 (1976); Crawford v. Maryland Casualty Co., La. App., 169 So.2d 612 (1964); Restatement (Second) of Torts, Volume 1, § 132, comment c, p. 237 (1965); Comment, Tort Liability of Law Enforcement Officers: State Remedies, 29 La.L.Rev. 130.
The following are the facts surrounding the plaintiffs' injuries:
Hodel led the officers to Kyle's apartment the night of the armed robbery. The apartment manager told them that Kyle's second floor apartment had only one entrance, the front door, and that the apartment had windows, but no balconies or porches at the windows.
The police barricaded the block with police cars. Outside the building, two officers covered the exits. Inside, five officers, under the direction of Lieutenant Fields, went to the apartment. These officers wore civilian clothes. Each carried their .38 calibre service revolver. In addition, Fields and Knight carried shotguns.
The apartment door fronted on a narrow, dimly lit hallway. It hinged on its right and opened inwards. Officer Williams stood in front of the doorknob and Officers Fields, Knight, and Miller stood in a line to his left. Officer DeRose was behind and to the left of Williams.
The adversaries in this litigation offer different versions of the events surrounding the shooting. The officers testified as follows: Williams, who stood in front of the doorknob, held his police identification and badge folder open in his left hand. (His revolver was hidden.) One of the officers knocked. Kyle opened the door. Williams flashed his identification and said "Police." Kyle immediately slammed the door. The hurried movement and voices within the apartment convinced them that they were the robbers attempting to escape or secure weapons. To prevent this and for self-protection, Williams kicked the door. When it opened about one foot, it was immediately slammed. Someone shouted "Police, open the door or we will blow it open." Williams, DeRose, and Fields then hit the door with their shoulders. It opened again, but was immediately shut. With his shotgun, Fields then fired twice at the area below the lock to disengage it. Using his service revolver, DeRose fired a third time through the uppermost top of the door. The force of the bullets opened the door to give the officers access to the apartment. When the officers entered, Kyle lay injured directly behind the door. The Godbeys were also wounded. The officers arrested them.
The plaintiffs' version is as follows: Kyle heard someone knock at the door. Although Godbey was closer to the door, he did not hear it. Kyle answered the door. He opened it about eighteen inches for approximately three seconds. Seeing three strangers, one armed with a pump shotgun, he slammed the door and braced himself against it. He saw no identification nor heard any. Kyle reacted so quickly because *974 he thought the men were robbers. (He had been recently robbed outside the apartment building.) Kyle called to Godbey for help to secure the door. As Godbey approached the door, he heard someone say that they were going to blow the door open. Mrs. Godbey also ran to assist the men. Fifteen seconds after he slammed the door, the officers fired through it.
We hold that the facts and circumstances support the trial court's finding that the police used excessive force in making the arrest. The officers stated that they rushed the door for self-protection and to prevent escape. They had good cause to believe that the suspects were armed. However, there was no evidence of immediate danger. The officers saw no weapons when the door opened. Lieutenant Fields testified that:
"We had sufficient manpower to cover the apartment, we had the type of weapons we felt we may need to meet any force." [Tr. p. 185.]
The officers knew the apartment had only one door and several windows. They covered each of these outlets. Thus, an escape was highly improbable.
The five officers at the door had five revolvers and two shotguns. Kyle the only man the officers saw, was sixty-five years old and weighed one hundred and forty pounds.
We recognize that police officers serve and protect the public at great risks to themselves. A felony arrest is often an emergency confrontation, requiring instantaneous, on-the-spot decisions. Hence, in these situations, police officers are not expected to act with the same clarity of judgment as others in the calm atmosphere of home or office. Nonetheless, under all the circumstances shown here, the use of deadly force was excessive. The apartment exits were covered; there was little chance of escape; the occupants made no attack on the officers. The officers could have delayed the arrest without great risk. Under these circumstances, we conclude that firing a shotgun blindly through the unlocked apartment door, knowing that someone was directly behind that door was unreasonable force.
We hold, therefore, as did the district court, that the police officer and his employer, the City of New Orleans, are liable for damages.[3]
We now reach the issue of quantum. The amount of damages was a major issue in the plaintiffs' brief to this Court and to the Court of Appeal. It is our practice to remand cases to the Court of Appeal to assess damages when that court has not passed upon the issue and when the issue is an important one. Holland v. Buckley, La., 305 So.2d 113 (1974); Weiland v. King, La., 281 So.2d 688 (1973); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Thus, we remand to the Court of Appeal to assess the damages.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside. The judgment of the district court is reinstated in such sum as may hereafter be fixed; and the case is remanded to the Court of Appeal for the assessment of damages according to law.
DIXON, J., concurs with reasons.
DENNIS, J., concurs fully in the holding that excessive force was employed and, therefore, does not reach or concur in the decision relating to probable cause.
DIXON, Justice (concurring).
I concur. I approve the result reached, but would hold further that if the police had probable cause to make a warrantless arrest, they could have obtained a search warrant, and, since no exigency is shown, should be required to obtain the warrant before breaking in a private residence. See State v. Ranker, 343 So.2d 189 (La. 1977), and the cases cited therein.
NOTES
[1] The court awarded the following amounts: Kyle-$25,000; Godbey-$750; Mrs. Godbey-$750; Charity Hospital-$3,448.
[2] In State v. Smith, La., 352 So.2d 216 (1977), and State v. Ranker, La., 343 So.2d 189 (1977), the majority indicated that Louisiana Code of Criminal Procedure Article 213(3) may be constitutionally infirm when officers enter a dwelling to make a warrantless arrest based on probable cause, but absent exigent circumstances. However, the constitutionality of the statute has never been squarely presented or decided. Under the principles cited, the officers had a right to rely on the statute.
[3] The trial judge held only Lieutenant Fields and the City of New Orleans liable. He did so presumably because Fields fired the shotgun, which produced the injuries. No one challenges or complains of the other officers' dismissal.