JiPLOTKIN, Judge.
Plaintiffs, Curtis C. Dyer, his wife, Made-lene Dyer, their five children, and their grandchild (hereinafter collectively designated as “the Dyer family”), appeal a-trial court judgment after a trial on the merits in favor of defendants, City of New Orleans and Police Officer William “Billy” Mims (hereinafter collectively designated as “the City”). We affirm.

Facts

This action arises out of injuries sustained by members of the Dyer family when the car in which they were riding was struck by stray bullets from a gun fight between Officer Mims, who was off-duty at the time, and robbery suspects. The incident occurred in the 4200 block of Ulloa Street near Carrolton Avenue in the City of New Orleans, somé-time between 9 and 11 p.m. on Thursday, November 29, 1991, while the Dyer family was en route to Mr. Dyer’s sister’s home to attend a Thanksgiving dinner. As a result of the incident, Mrs. Dypr. was struck in the face by a bullet fragment, sustaining facial injuries and scarring. | aAdditionally, one of the children, Emmanuel, who was 11 at the time, suffered injury when a bullet fragment lodged in his head; it is not removable. All of the members of the Dyer family claim that they suffer emotional damages as a result of the incident.
The Dyer family did not witness the actual' gun fight.' However, in support of their ease against Officer Mims and the City, they presented the testimony of Angelo Bridgewater, who witnessed the incident from the second-floor bedroom at the rear of his home at the corner of Ulloa and Solomon streets. Mr. Bridgewater testified that he had noticed a suspicious vehicle driving around the neighborhood and had taken his family inside. Shortly thereafter, he heard screams from a group of children who were playing in front of a house several doors over from Mr. Bridgewater’s home. He looked out the window and saw Officer Mims “busted out” out of the door of the house, brandishing a gun. According to Mr. Bridgewater, Officer Mims ran into the street, shooting at two men who were running down the street. One of the men was struck and went down. At that time, Mr. Bridgewater said, the other man turned and shot at Officer Mims, then turned the corner, jumped into his car, and got away. Officer Mims shot eight or nine times and was the only one who shot in the direction of the automobile occupied by the Dyer family, Mr. Bridgewater stated.
Officer Mims, who was a member of the New Orleans Police Department’s Reserve Division, testified differently. He had just *868 arrived at Ms girlfriend’s house in the 4200 block of Ulloa on Thanksgiving night, 1991, when he heard his girlfriend’s mother, then his girlfriend, screaming for him to come because someone was being robbed in front their house. He grabbed his gun and his police radio, which he had just laid on his girlfriend’s dresser, and ran down the stairs. When he opened the screen door, he saw two men, one of which was holding ajjgirl in front of him and threatening to take her with him. When he opened the door, he said, “Freeze, police,” at which time the man released the hostage, turned, and ran. Officer Mims said that he thought he saw a shotgun in the man’s hand, so he ran out of the house, and got behind a car for cover.' When he saw a second man running on the sidewalk, he ran into the middle of the street and told him to “Freeze, police.” At that point, the first man, who had the shotgun, turned and took a defensive position, Officer Mims said, and the second man started shooting at him. He returned the fire, and saw the man with the shotgun fall. The other man then ran off down the street.
Officer Mims testified that he opened fire only because he feared injury. He did not shoot the second man as he ran away, he said, because he was fleeing and no longer presented a risk to his life because he was no longer shooting at him. He did not know there were any other people on the street at the time of the incident, other than the people behind him, Officer Mims said. He never fired up Ulloa Street into the next block, he said.
In response to questions from the plaintiffs’ attorney, Officer Mims admitted that police officers are legally allowed to fire their weapons only if their life is in danger, or in defense of another person. Moreover, police officers are not allowed to use deadly force merely to apprehend or stop a fleeing subject. Police regulations do say that the unnecessary or premature drawing or exhibiting of a firearm “limits an officer’s alternative in controlling a situation, creates unnecessary anxiety on the part of citizens, and may result in an unwarranted or accidental discharge of the firearm,” but asserted that he did not draw or exhibit his firearm unnecessarily or prematurely. The gun was in his hand when he ran into the street only because he grabbed it off the dresser, he said. Police officers Uare not supposed to shoot at innocent or guilty people, Officer Mims admitted; “our job is to apprehend.”
In entering judgment in favor of the City and Officer Mims, the trial court found specifically that Officer Mims’s actions in exiting the building with his firearm drawn were reasonable, “given what Officer Mims saw and heard prior to existing [sic] the building.” Moreover, the trial judge found that Officer Mims only returned shots after one of the suspects turned and shot at him first. Moreover, the trial judge noted that the photographs admitted into evidence tended to discredit the testimony of Mr. Bridgewater. The trial judge concluded that “plaintiffs have not proven by a preponderance of the evidence that Officer Mimms [sic] either acted unreasonably or that he breached a duty by violating departmental policy.” In their only assignment of error, the plaintiffs claim that the trial court erred by failing to apply a duty-risk analysis to the facts of this case.

Duty-risk analysis

This court has recently considered the responsibility of police officers engaged in gun fights with suspected criminals in the presence of innocent citizens. See Brown v. Diversified Hospitality Group, 96-0413 (La.App. 4 Cir. 4/30/97) 694 So.2d 520 and Stroik v. Ponseti 96-0842, 96-1500 (La.App. 4 Cir.11/6/96), 683 So.2d 1342, writ granted, 96-2897 (La.2/7/97), 688 So.2d 483.[1] In Stroik, the court adopted the duty-risk analysis for determining whether the City and the police officer should be held liable for a citizen’s injuries, as set out by the Louisiana Supreme Court in Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318. In order to recover in such a case, the plaintiff must prove five elements:
*869 (1) the ■ defendant had a duty to conform his conduct to a specific standard; (2) the •defendant failed to conform his conduct to the appropriate standard; (3) the defendant’s substandard conduct was a eause-in-fact-of the plaintiff’s injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) actual damages.
Stroik, 683 So.2d at 1349.
The first two inquiries listed above, which form the crux of the instant case, were further explained in Stroik as follows:
Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any law — statutory, jurisprudential or arising from general principles of fault — to support his claim. The scope of the duty inquiry is a question of policy as to whether the particular risk falls within the scope of the duty. Rule of conduct are designed to protect some persons under some circumstances against some risks. The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. In determining the limitation to be placed on liability for defendant’s substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.
Id. (Citations omitted.)
Concerning the first element — the existence of a duty — this court has held that police officers do have a duty to the public which arises from a “social contract” that confers upon them “the authority to enforce the laws of the city and state within his jurisdiction and subject to the order of his superior officers.” Id. This duty has been described as the duty “to exercise [that authority] both with respect and concern for the well being of those he is employed to protect and serve.” Id.
Concerning the second element— whether the police officer breached the duty by failing to conform his conduct to the duty — the Louisiana Supreme Court has _Jf¡established a standard of “reasonableness under the circumstances.” Brown, 694 So.2d at 525; Stroik, 683 So.2d at 1350. In other words, “an officer’s course of conduct need only be reasonable, not ideal.” Brown, 694 So.2d at 525. Thus, in determining breach of duty, “the specific factual situation must be considered to determine whether unreasonable conduct by the officer was the legal cause of the bystander’s injury.”- Id. (Emphasis in original.)
Determination of reasonableness under the circumstances, in turn, is determined on the basis of the factors established by the Louisiana Supreme Court in Kyle v. City of New Orleans, 353 So.2d 969 (La.1977). Those factors include the following:
the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee’s escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.
Id. at 973.
In the instant ease, the trial court accepted the testimony of Officer Mims over that of Mr. Bridgewater. According to Officer Mims, the men he was trying to arrest had robbed people in a residential neighborhood and had threatened to take a hostage; they were both carrying guns. Officer Mims faced serious danger considering the fact the men opened fire on him when he told them to “Freeze, police.” Obviously, - the chance of escape was great given the fact that one of the men did escape despite Officer Mims’ efforts. Since the men were running away and were shooting at a police officer who had identified himself, no alternative methods of arrest -seemed available. Although neither witness said anything concerning the physical size and strength of the suspects, Officer Mims noted they each had weapons, meaning they had more weapons than he did. Finally, the ^testimony indicates that the whole incident occurred very quickly. Thus, all of the factors enunciated in Kyle support the trial court’s finding that Officer Mims did not act unreasonably.
*870 The plaintiffs failed to prove that Officer Mims breached his duties because they failed to prove that his actions were unreasonable under the circumstances; thus, the trial court judgment in favor of the City and Officer Mims is correct. We pretermit discussion of the last three elements of a duty-risk analysis.

Conclusion

Accordingly, the trial court judgment is affirmed.

AFFIRMED.

. WE recognize the fact that the Louisiana Supreme Court has granted writs of certiorari in Stroik, and that it is therefore not a final decision. We cite it here only as authority for well-settled principles of law concerning a police officer’s duty to an innocent citizen in circumstances like those presented by this case.