CHEHARDY, C.J.
hOn appeal, plaintiff seeks review of the trial court’s finding in favor of defendants and dismissal of all of plaintiffs’ demands. For the following reasons, we affirm the trial court’s ruling.
Facts
On the night of March 5, 2001, authorities received a 9-1-1 hang-up call originating from 1145 Tensas Drive in Harvey, Louisiana, in Jefferson Parish. According to policy, Jefferson Parish Sheriffs (“JPSO”) deputies were dispatched to the address to investigate. When Deputy Aswald Falgout, a 12-year veteran of the JPSO, arrived, he rang the doorbell and Ms. Phyllis Batiste answered the door. A few seconds later, Bryant Sears, Sr., Ms. Batiste’s longtime boyfriend, walked up behind her and told the deputy that there was no problem. When Deputy Falgout asked Ms. Batiste if there were any problems, Ms. Batiste told him that Mr. Sears had been beating her son, Willis, who had escaped from the house.
In the meantime, Deputy Ryan Singleton, a three-year employee of the JPSO, had arrived so the deputies began speaking with Ms. Batiste and Mr. Sears about the situation. Almost immediately, a young man rounded the corner of the house about 25 to 30 feet away and walked quickly toward them. As he approached, Deputy Falgout turned to ask Ms. Batiste the young man’s name and Ms. Batiste identified him as her son, Willis Batiste. Almost immediately, Deputy Falgout looked back at the young man, who was approaching quickly, and saw the glint of a knife in Willis Batiste’s hand. Immediately, Deputy Falgout drew his service revolver and shouted to Willis Batiste to drop the knife but Batiste raised the knife and struck Mr. Sears. Deputy Singleton, who was a few feet behind Deputy Falgout, also drew his service revolver and instructed Batiste to drop the knife.
D.Twice more, Willis Batiste struck Mr. Sears. Twice more, Deputy Falgout instructed Batiste to drop the knife. When Batiste refused to comply with the third request, Deputy Falgout shot him once in the lower right side.
After the shooting, Deputy Singleton approached Batiste, who had dropped the knife handle when he fell. At this point, the deputies observed that the knife blade had been broken during the struggle so Mr. Sears had not been stabbed.
Deputy Singleton testified that the period of time between the moment that Willis Batiste attacked Mr. Sears until he was shot by Deputy Falgout was two to three seconds. Further, the dispatch records reflect that the entire episode from the moment Deputy Singleton arrived on scene until he called for an ambulance for Willis Batiste was 46 seconds.
Procedural History
On March 2, 2002, plaintiff, William Dawson, individually, and as surviving father of Willis Batiste, filed suit against Aswald Falgout, Ryan Singleton, Harry Lee,[1] in his capacity as Sheriff of Jefferson Parish, and JPSO’s insurer. On March 5, 2002, plaintiffs, Phyllis Batiste, individually and as the natural tutor of her minor children, Jasmine Sears, Bryant Sears, Jr., *377 and William Batiste filed suit against Harry Lee,[2] in his official capacity of Sheriff of Jefferson Parish, Aswald Falgout, Ryan Singleton, Hospital Service District No. 1 Jefferson Parish d/b/a West Jefferson Medical Center, and Boyd Edwards.[3]
On June 10, 2002, William Dawson moved to consolidate the two matters for trial. On May 19, 2009, the trial judge signed the order of consolidation.
On December 15, 2015, the matter proceeded to trial before the bench. After hearing the testimony and reviewing all the evidence, the trial court found in Isfavor of defendants and dismissed all of plaintiffs’ demands. Plaintiff, Phyllis Batiste, in proper person, appeals that ruling.
Law and Argument
On appeal, Ms. Batiste contends that the trial court erred in failing to find that the deputies were negligent when they used “excessive and unreasonable force” against her son, Willis Batiste. Ms. Batiste further contends that the Jefferson Parish Sheriffs Office was negligent because “Officers Aswald Falgout and Ryan Singleton did not have the proper training to deal with this domestic issue.” Finally, Ms. Batiste contends that she “acquired ineffective assistance of counsel” because she was not advised by her attorney that the trial was before the judge, not a jury.
Standard of Review
It has long been “well-settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978). Further, if the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, supra.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear Rwrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell, 549 So.2d at 844-45 (citations omitted). With these principles in mind, we must review the record and determine if the trier of fact erred in its conclusion.
*378 Negligence
Louisiana has adopted a duty-risk analysis in order to determine whether to impose liability pursuant to La. C.G. art. 2315. To prove negligence, a plaintiff must prove: (1) the conduct in question was the cause-in-fact of the resulting harm; (2) defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; (4) the risk of harm was within the scope of protection afforded by the duty breached; and (5) actual damages. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La. 1993); Mart v. Hill, 505 So.2d 1120 (La. 1987). Under the duty-risk analysis, all five inquiries must be answered affirmatively for plaintiff to recover for a defendant’s negligence. Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318, 322.
First, cause-in-fact is generally a “but for” inquiry. If the plaintiff probably would not have sustained the injuries but for the defendant’s conduct, such conduct is a cause-in-fact. Fowler v. Roberts, 556 So.2d 1, 5 (La. 1989). To the extent the defendant’s actions had something to do with the injury that the plaintiff sustained, the test of a factual, causal relationship is met. Under the instant set of facts, it is clear that Deputy Falgout’s actions were a cause-in-fact of Willis Batiste’s sustained injuries.
Second, whether a duty is owed by this defendant to this plaintiff is a question of law. Mundy v. Department of Health & Human Resources, 620 So.2d 811, 813 (La. 1993); Faucheaux, 615 So.2d at 292. The supreme court has held that the duty owed by police officers when approaching a subject prior to ^disarming him or her is one of reasonableness under the totality of the circumstances. Mathieu, supra, 646 So.2d at 323. Thus, both deputies owed Willis Batiste a duty of reasonableness under the totality of the circumstances.
Next, the inquiry is whether the duty owed by the officers to the subject was breached. In Mathieu, the supreme court held that the reasonableness of the officers’ actions under the particular circumstances of a case should be determined through consideration of the factors enunciated in Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977), which articulated a standard of conduct for police officers to follow when making an arrest.
The Kyle factors to determine whether the officers acted reasonably under the circumstances are: (1) the known character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee’s escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment. Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case. Kyle, supra. A court must evaluate the officers’ actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers. Kyle, supra.
The first Kyle factor is the known character of the subject. The information gleaned from the 9-1-1-hang-up call and available to the officers was very limited. When the officers arrived, Ms. Batiste informed them that Mr. Sears had beaten her son, Willis, who then left the house. There was no information that Willis Batiste was armed when he departed from the house.
The second Kyle factor is the risk of danger faced by the officers. The officers *379 initially observed a man and a woman at the door of their home reporting an incident. The officers did not observe any weapons until Willis Batiste arrived Ron the scene, moving quickly toward Bryant Sears, with a knife. The risk of danger faced by these officers and Mr. Sears immediately escalated to imminent when Willis “lunged” at Mr. Sears within five feet of the deputies.
The third Kyle factor is the nature of the offense involved. In this case, the officers responded to a 9-1-1 hang-up call, which needed to be investigated. When Willis Batiste approached with a weapon, however, the nature of the offense transformed, and the officers had every reason to treat it, as serious and potentially life-threatening.
The fourth Kyle factor is the chance of the subjects’ escape if the particular means are not employed. Based on the fact that Willis Batiste had already left the scene and gone into the mostly residential area to arm himself once, it appears that the likelihood of escape in this case was substantial.
The fifth Kyle factor is the existence of alternative methods. In this case, there was no testimony that alternative methods for confronting an armed assailant attempting to stab an unarmed person existed. Further, even if other available alternative methods existed, that does not, in and of itself, render the method chosen unreasonable. Mathieu, 646 So.2d at 324. Here, as both deputies believed that Willis Batiste was stabbing Bryant Sears, there was nothing unreasonable about the alternative elected by Deputy Falgout under these circumstances.
The sixth Kyle factor is the physical size, strength, and weaponry of the officers as compared to the suspect. With two police units ultimately arriving at the scene, the officers enjoyed a tactical advantage against Willis Batiste but did not know if there were other armed individuals.
The seventh and final Kyle factor is the exigency of the moment. In this case, the dispatch records reveal that the entire exchange occurred in less than 46 seconds. Further, according to Deputy Singleton, only two to three seconds elapsed from the moment Willis Batiste entered the scene and began his attack on |7Mr. Sears until Deputy Falgout shot him. Given the above facts, we find the exigency of the circumstances was elevated.
After hearing the testimony and carefully examining all of the evidence, the trial judge found that, considering the totality of the circumstances surrounding the shooting in this case, the plaintiffs had not proven that the deputies’ actions were negligent in this case. Based on our review of the record before us in light of the Kyle factors, we find no error in the trial judge’s ruling.
Furthermore, finding no negligence by the deputies, we pretermit discussion of the remaining question regarding lack of proper training by the Jefferson Parish Sheriffs Office.
Finally, Ms. Batiste contends that she received “ineffective assistance of counsel” because she was not informed that the trier of fact would be the judge.
First, the Sixth Amendment to the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” Wheat v. United States, 486 U.S. 153,158-159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988), citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(the Amendment “secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious *380 crime.”). However, a civil litigant has no constitutional right to “effective assistance” of counsel.
Moreover, the Seventh Amendment of the United States Constitution, which insures the right to civil jury-trials “according to the rules of the common law,” is one of the few rights contained in the Bill of Rights that has not been made applicable to the states through the Fourteenth Amendment as a fundamental right of due process. Rudolph v. Massachusetts Bay Ins. Co., 472 So.2d 901, 905 (La. 1985). Thus, the right to a civil jury trial is not a constitutionally protected right in [ ¡¡Louisiana by virtue of either the state or national constitutions. Riddle v. Bickford, 00-2408 (La. 5/15/01), 785 So.2d 795; Rudolph, supra.
In Louisiana, the right to a jury trial in a civil case is provided for by statute. La. C.C.P. art. 1731 et seq. While the right to a jury trial is fundamental, it must be requested timely. Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1st Cir.), unit denied, 605 So.2d 1099, 1100 (La. 1992). If a request for a jury trial is not made timely, the right is waived.
The instant action in particular is governed by the Louisiana Governmental Claims Act (hereinafter “LGCA”), found at La. R.S. 13:5101 et seq., which applies “to any suit .,, for injury to person ... against ... a political subdivision of the state, as defined herein, or against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment.” La. R.S. 13:5101(B). La. R.S. 13:5102(B) defines “political subdivision” to include sheriff and the sheriffs employees. Powell v. Regional Transit Authority, 96-0715 (La. 6/18/97), 695 So.2d 1326.
Further, La. R.S. 13:5105 provides, in pertinent part, that:
A. No suit against a political subdivision of the state shall be tried by jury. Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by jury.
B. Whenever a jury trial is demanded by the state, state agency, or the plaintiff in a lawsuit against the state or state agency, the party demanding the jury trial shall pay all costs of the jury trial, including the posting of a bond or cash deposit for costs in accordance with Code of Civil Procedure Articles 1733 through 1734.1, inclusive. (Emphasis added).
In this case, the record reflects that the plaintiff included a demand for a jury in her petition, however, there was no order attached to the demand. As a result, there was no bond set. By law, the plaintiff seeking a jury trial “shall pay all costs of the jury trial, including the posting of a bond or cash deposit for costs in | ^accordance with Code of Civil Procedure Articles 1733 through 1734.1.” The record before us does not reveal that a bond was posted as required and, thus, the demand for a jury was not properly made. Because the demand was not properly made, the right was waived.
Conclusion
For the foregoing reasons, we find no error in the trial court’s ruling in this case dismissing plaintiffs’ claims. The trial court’s judgment is hereby affirmed.
AFFIRMED.
JOHNSON, J., DISSENTS WITH REASONS

. Although it is unclear from the record when it occurred, Newell Normand in his capacity as the Sheriff of Jefferson Parish, was substituted for Harry Lee as a defendant in these matters.

. See fn. 1, supra.

. The medical malpractice claims against West Jefferson Medical Center and Boyd Edwards were dismissed on exceptions of prematurity in 2002, Those claims are not the subject of this appeal.