# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-359

**ESTATE OF DERRICK FRANCIS, ET AL.**

**VERSUS**

**CITY OF RAYNE, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 81532-D
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED AS AMENDED.**

John F. Wilkes, III
Lisa E. Mayer
Borne & Wilkes, L.L.P.
Post Office Box 4305
Lafayette, LA 70502-4305
(337) 232-1604
COUNSEL FOR DEFENDANTS/APPELLANTS:
    City of Rayne
    Officer Marlo Foreman
    Officer Daniel Boulet

Jarvis J. Claiborne
Post Office Box 1033
Opelousas, LA 70571-1033
(337) 948-4336
COUNSEL FOR PLAINTIFF/APPELLEE:
    Estate of Derrick Francis
    Felecia R. Batiste

**Daniel J. Stanford**
**117 Caillouet Place**
**Lafayette, LA   70501**
**(337) 232-2272**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Officer Marlo Foreman**

AMY, Judge.

The plaintiffs filed suit against the City of Rayne and two of its police officers after the decedent was shot to death following a low-speed pursuit by police officers. The trial court found the defendants liable for wrongful death, apportioning ninety percent of the fault to the defendants and ten percent to the decedent. The trial court awarded general damages in the amount of $650,000.00. The defendants appeal. For the following reasons, we affirm as amended.

## Factual and Procedural Background

This wrongful death suit involves a series of events occurring at approximately 12:30 a.m. on September 7, 2003 in Rayne, Louisiana and resulting in the death of Derrick Francis. Master Trooper Dan Hudson of the Louisiana State Police prepared the crash reports associated with the incident and testified as to the events. Trooper Hudson explained that Mr. Francis was initially involved in a single car crash while traveling westbound on LA 98 in Rayne. This first crash occurred when Mr. Francis crossed the center line in his 2003 Dodge Neon, left the road, and struck a street sign. The vehicle struck and tore away a portion of the curb. According to Trooper Hudson, this first crash resulted in the deflation of the Francis vehicle's tires.[1] However, the tires remained on the rims.

After freeing the vehicle from the curb, Mr. Francis traveled south in the northbound lane of LA 35 and was involved in the second crash recorded by Trooper Hudson. Taryn Hunt explained that she was traveling northbound on the roadway, when she saw the Francis vehicle approaching in her lane of travel. Although Ms. Hunt swerved into the opposing lane of traffic to avoid a collision, the Francis vehicle struck the rear passenger side of her vehicle, tearing away the bumper.

---

[1] The sequence in which the tires of the Francis vehicle were flattened and at what point they were reduced solely to the metal rims were at issue at trial.

Lacey Kibodeaux, a dispatcher with the Rayne Police Department, testified that this second crash, involving Ms. Hunt, was first reported by Micah Thibodeaux at approximately 12:30 a.m. Mr. Thibodeaux reported that "a silver Dodge Neon with no tires, the tires were blown out, was spinning his tires on the road and was trying to hit a couple of vehicles." After Mr. Thibodeaux reported that the Neon had struck a vehicle, Ms. Kibodeaux dispatched Officers Marlo Foreman and Daniel Boulet to the scene. She initially reported the call as an accident, but after being informed that the car left the scene, she changed the call to a hit and run accident.

Trooper Hudson explained to the trial court that, after striking Ms. Hunt's vehicle, Mr. Francis moved into the southbound lane and continued traveling in that direction. Although the front left tire separated from the rim, the vehicle continued rolling on its rim. Officer Foreman testified that he approached this scene from the north and turned his patrol car to follow Mr. Francis. According to Officer Foreman, Mr. Francis initially increased his speed, but ultimately stopped at "A School" and North Adams Streets. Officer Foreman explained that, by this time, Mr. Francis had turned his vehicle northwest. Officer Boulet approached the scene from the south. Both officers exited their police cruisers and approached the Francis vehicle from either side. Despite a verbal command to do so, Mr. Francis did not exit his vehicle. Officer Boulet explained that he tried to open the driver's side door but that it was locked. According to the officer, Mr. Francis placed his car in reverse, turned the wheel, and then proceeded north on LA 35. Both Officers Boulet and Foreman described moving from their positions to avoid being hit when Mr. Francis made this turn and left the scene.

2

Traveling north on LA 35, Mr. Francis encountered Rhyanna Brown who was traveling southbound in the same lane before stopping her vehicle behind one of the police cruisers. According to Ms. Brown, Mr. Francis was originally in the northbound lane when he left the scene, but that at some point "he just was like barreling towards me and he caught the rear panel, rear quarter-panel on the driver's side of my car." She described her car as making "a 180." Her tire was also flattened.

With Officers Boulet and Foreman in pursuit, Mr. Francis continued north on LA 35. During this time, Officer Foreman fired shots at the Francis vehicle in an attempt to disable it. Officer Foreman testified that he believed that he had stopped his police cruiser at the time he fired the undetermined number of shots.

Despite these initial gunshots, Mr. Francis continued driving until he struck the truck of Officer Ronald Garrie at the intersection of LA 35 and LA 98. Officer Garrie responded to the scene after hearing the radio transmissions. He exited his vehicle after the truck was hit. Officer Boulet subsequently pulled his police cruiser behind the Francis vehicle. The degree to which the Francis vehicle was trapped between the truck and car was contested at trial, as was the ability of the Francis vehicle to escape. However, according to the officers, Mr. Francis continued to shift his vehicle from drive to reverse, revving the engine. While all three officers drew their weapons, only Officers Boulet and Foreman fired their weapons after Mr. Francis did not respond to the commands to exit the car. While he could not recall the exact count, Trooper Hudson explained that there were approximately twenty rounds fired. The record indicates that two of these bullets struck Mr. Francis in the head, while one struck him in the left hand. Acadian Ambulance personnel responding to the scene found

3

Mr. Francis dead. Dr. Terry Welke of the Calcasieu Parish Coroner's Office listed the cause of death as the two gunshot wounds to the head.

According to Trooper Hudson, the crashes occurred in an area of approximately 700 feet, while information from the dispatcher indicates that approximately two minutes passed between the time of the initial call reporting the crash with Ms. Hunt's car until the call for an ambulance at the time of the shooting. The coroner was requested a few minutes later.

The Estate of Derrick Francis and Felecia R. Batiste, as the legal tutrix of Mr. Francis' minor son, Dontay, filed suit for damages associated with Mr. Francis' death. They named the City of Rayne, through Chief of Police George Melancon, and Officers Foreman and Boulet as defendants. The officers were named in their individual capacities as well as in their capacities as police officers. Following a bench trial, the City and both officers were found liable for the wrongful death of Mr. Francis. The trial court apportioned ninety percent of the fault to the defendants and ten percent to Mr. Francis, due to his "failure to stop and respond to the commands of the police officers." The trial court awarded $650,000.00 in general damages, but denied the plaintiffs' demand for funeral expenses due to inadequate proof.

The defendants appeal and, in their brief to this court, assert that the trial court erred in: 1) failing to find that the officers acted reasonably in the use of deadly force in light of the circumstances; 2) assuming "the position of an 'advocate'" during the trial; 3) allowing inappropriate expert testimony; 4) not permitting Trooper Hudson to testify as to the existence of probable cause to charge Mr. Francis with aggravated assault; 5) failing to permit their expert to testify regarding the fleeing felon rule; 6) not allowing the use of the criminal trial testimony of a witness who was unavailable;

4

7) failing to apply an adverse presumption against an expert retained by the plaintiffs, but not called as a witness; 8)failing to apportion greater fault to Mr. Francis for his role in his own death; and 9) in awarding excessive damages.

**Discussion**

*Reasonable use of force*

The defendants first contend that the trial court erred by finding in favor of the plaintiffs and assert that the circumstances required a determination that the use of deadly force was reasonable. They argue that the testimonies of the officers and various witnesses indicate that the officers were reasonably in fear for their own safety or that of other citizens. This perception of fear and possible escape, the defendants contend, was furthered by Mr. Francis moving his vehicle forward and backward and revving his engine.

Louisiana Civil Code Article 2315(A) provides that: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[2] The duty/risk analysis is used to determine whether liability is imposed under Article 2315 and requires a plaintiff to prove that:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

---

[2] Also pertinent to this wrongful death claim is La.Civ.Code art. 2315.2, which provides:

A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:

(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

*Mathieu v. Imperial Toy Corp.*, 94-952, pp. 4-5 (La. 11/30/94), 646 So.2d 318, 322.

In *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977), the Louisiana Supreme Court cited La.Code Crim.P. art. 220[3] in holding that a police officer owes a duty of reasonableness in using force when making an arrest. Later, in *Mathieu*, 646 So.2d 318, the supreme court found that the duty of reasonableness expressed in *Kyle* applied to officers approaching a suspect for the purpose of disarming him. This court, in *Lewis v. Kahn*, 95-1203 (La.App. 3 Cir. 3/6/96), 670 So.2d 777, *writ denied*, 06-818 (La. 5/10/96), 672 So.2d 927, relied on both *Mathieu* and *Kyle* in finding a duty of reasonableness applicable in a situation in which police officers shot a suspect threatening motorists and officers with a knife.

Thus, Officers Boulet and Foreman owed a duty of reasonableness in the force used to apprehend Mr. Francis. The critical inquiry faced by the trial court in this case, and the one at issue in this assignment, is whether the police officers breached this duty of reasonableness by using deadly force in this instance.

The reasonableness of the force used must be limited to that required by the totality of the facts and circumstances of each case and the officers' actions must be evaluated "against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers." *Kyle*, 353 So.2d at 973. The supreme court set forth the following factors to be considered in the reasonableness evaluation: 1) the known character of the arrestee; 2) the risks and dangers confronting the officers; 3) the nature of the underlying offense; 4) the

---

[3] Louisiana Code of Criminal Procedure Article 220 provides:

> A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.

chance of escape if the particular means at issue are not employed; 5) the existence of alternative methods of arrest; 6) the physical size, strength, and weaponry of the officers compared to those of the arrestee; and 7) the exigencies of the moment. *Id.*

The defendants contend that the trial court failed to consider the facts of this case in light of the above factors. While the specific factors listed above were not specifically addressed in the reasons for ruling, it is clear that the trial court made a determination that the force used by the officers was not reasonable under the circumstances. After review of the record, we find no manifest error in its ultimate conclusion. We further find that the trial court's conclusion is not clearly incorrect in light of the *Kyle* factors.

It is important to recall that the trial court found both the defendants *and* Mr. Francis at fault in the shooting death. This was not a case of a fault-free victim. Rather, the officers were responding to an unfolding scene that began with a report of a hit and run accident. Undoubtedly, Mr. Francis was acting erratically and failed to stop when pursued by the officers and when commanded to exit the vehicle. All of these events unfolded at night in an atmosphere of noise, smoke, and poor visibility. Furthermore, much of the argument and evidence addressed events during the low speed chase and at the A School Street location. Certainly, these are relevant factors when considering the officers' perception of the danger of the situation.

However, the critical portion of the trial court's ruling is its determination that, before the fatal shots were fired, the Francis vehicle was trapped between Officer Reggie's truck and Officer Boulet's vehicle, effectively bringing the chase, the potential for escape, and imminent danger to an end. Even in light of the officers' testimony that Mr. Francis was shifting the vehicle forward and backward, the trial

7

court was not required to find that it was a reasonable perception that the vehicle could escape or could cause further harm. Testimony in the record supports the view that Mr. Francis' hands were in the air at the time of the shooting and, even if his hands were not raised in surrender, the trial court was free to determine that Officer Foreman, then joined by Officer Boulet, continued to fire after the threat of harm to themselves or the public had de-escalated to the extent where deadly force was not reasonable.

Further, the trial court accepted the testimony of Lloyd Grafton, qualified as an expert in the field of use of force and police policy and procedure. Dr. Grafton referenced photographs showing the final location of the car and explained that its position and lack of tires indicated that the car would not have had traction if Mr. Francis attempted to escape. He opined that, given these circumstances, "at the point [the officers] used deadly force, in my judgment, had they slowed down, they could have used other options without taking the man's life." The trial court was free to accept this expert testimony and free to discount that of the defendants' expert. *See Lasyone v. Kansas City S. R.R.*, 00-2628, p. 11 (La. 4/3/01), 786 So.2d 682, 692, wherein the supreme court noted that "it is well accepted that the trier of fact is charged with the determination of what credibility it assigns to expert witnesses and then to decide which expert among those testifying that it finds more credible." The photographs showing the resting place of the Francis vehicle between the police cruiser and Officer Garrie's truck were available for the trial court's review as well.

In short, the trial court was free to determine that the police officers were faced with a dangerous situation in their encounter with Mr. Francis, but that, once his vehicle was effectively immobilized, the level of force used became unreasonable.

The record contains no evidence indicating that Mr. Francis suggested that he had a dangerous weapon other than the car itself. As stated above, the trial court's determination that the car was effectively immobilized at the time of the shooting is supported by the record.

This assignment lacks merit.

*Actions of the trial court*

The defendants point to a number of instances in which they contend the trial court assumed the role of advocate, including the trial court's questioning of witnesses, and assert that the questioning elicited new information rather than clarifying the testimony brought forth by the attorneys. The defendants also argue that the trial court inappropriately objected to and excluded testimony and evidence on its own motion. Finally, they contend that the trial court lacked a basis for rejecting certain testimony, including that of the defense expert, and that it instead relied upon its own speculation and conclusions.

With regard to the questioning of witnesses, La.Code Evid. art. 614(B) provides that: "The court may question witnesses, whether called by itself or by a party." Without comment on the appropriateness of the questioning, we note that Article 614(C) provides: "Objections to the calling of witnesses by the court or to questioning of witnesses by it may be made at the time or at the next available opportunity when the jury is not present." No objection was entered into the record on this point. Thus, pursuant to Paragraph (C), the defendants failed to preserve this argument for review on appeal. *See also Salley & Salley v. Stoll*, 03-807 (La.App. 5 Cir. 12/9/03), 864 So.2d 698. The failure to contemporaneously object similarly prevents review of the defendants' contention that the trial court erroneously lodged

its own objections to evidence it deemed irrelevant to the proceedings. *See LeBlanc v. Acadian Ambulance Serv., Inc.*, 99-271 (La.App. 3 Cir. 10/13/99), 746 So.2d 665 (wherein the court noted that failure to lodge an objection at trial waives a party's right to complain on appeal).

Finally, the defendants' general contention that the trial court acted as an advocate in disregarding certain expert testimony in favor of the version of events offered by the defense lacks merit. The type of credibility determination and consideration of varying witness accounts complained of is part of the role of the finder of fact. *See Lasyone*, 786 So.2d 682. While the defendants complain that the trial court repeatedly commented on its view of the evidence throughout the course of the trial, it is important to recall that this was a bench proceeding, not a jury trial. *See* La.Code Civ.P. art. 1791.[4] There is no indication that the trial court failed to adequately consider the evidence and witness testimony presented by the defendants.

This assignment lacks merit.

*Evidentiary Matters*

The defendants next question a number of evidentiary rulings and contend that the allegedly erroneous rulings collectively require a de novo review of the record.

Expert Testimony

The defendants first assert that the trial court violated La.Code Evid. art. 702[5]

---

[4] Entitled "Comment on facts by judge prohibited," Article 1791 provides: "The judge *in the presence of the jury shall not comment upon the facts of the case*, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." (Emphasis added.)

[5] Article 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

10

by permitting experts to testify as to areas exceeding their expertise. They first claim that the trial court erred in permitting Lloyd Grafton, an expert in the fields of use of force and police policy and procedure, to offer testimony regarding his opinion as to the possibility that the Francis vehicle could have escaped from its final position between the truck and patrol car. The trial court overruled the defendants' objection on this point, stating that the witness was "an expert."[6] Notwithstanding a trier of fact's ability to assess the appropriate weight to be given to witness testimony, a trial court has broad discretion in determining the *breadth and scope* of an expert's testimony. *Barnco Int'l, Inc. v. Arkla, Inc.*, 28,157 (La.App. 2 Cir. 11/15/96), 684 So.2d 986, *writs denied*, 97-19, 97-58 (La. 2/7/97), 688 So.2d 511 (emphasis added). We find no abuse of discretion in the trial court's determination in this regard.

Testimony of Trooper Dan Hudson

Neither did the trial court abuse its discretion in its evidentiary rulings regarding Trooper Hudson, who was permitted to testify as a fact witness, but not as an expert witness in the field of accident reconstruction. Although the defendants attempted to question Trooper Hudson as to whether he would have charged Mr. Francis with aggravated assault, the trial court disallowed the line of questioning. Trooper Hudson was not a witness to the events. Furthermore, and although the factual findings leading to a probable cause determination are subject to the manifest error-clearly wrong standard of review, the existence of probable cause is a legal question for the trial court. *See State v. Gauthier*, 02-1227 (La.App. 3 Cir. 4/17/03),

---

[6] Although the defendants contend that the trial court's ruling as to Dr. Grafton's testimony is "opposite" to its exclusion of testimony regarding the mobility of the truck sought from Trooper Tim Breaux, we point out that Trooper Breaux was not qualified as an expert.

854 So.2d 910. Accordingly, the trial court neither erred nor abused its discretion in its rulings as to Trooper Hudson.

Fleeing Felon Rule

Similarly, the trial court did not err in denying the defendants' attempted questioning of Dr. Gould on what it described as the "Fleeing Felon Rule."[7] The questioning differed from the situation anticipated by La.Code Evid. art. 704, which provides in part that: "Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact." Instead, defense counsel sought comment on the applicability of a specific United States Supreme Court case, *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694 (1985), to the situation at hand. The transcript also reveals that defense counsel was permitted to extensively question Dr. Gould on the ultimate issue, *i.e.*, the threat posed by Mr. Francis and the reasonableness/justification of the officers' actions under the circumstances.

---

[7] *See Tennessee v. Garner*, 471 U.S. 1, 12, 105 S.Ct. 1694, 1701 (1985), wherein the United States Supreme Court considered the factual scenario before it in rejecting the application of the common law rule which permitted "whatever force was necessary to effect the arrest of a fleeing felon, though not a misdemeanant." Finding the common law rule archaic insofar as it stemmed from a time when virtually all felonies were punishable by death and before the availability of guns to the police, the Supreme Court instead explained that:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11-12; 1701. From the broad questioning by the defense counsel and the styling of the inquiry as one involving the "Fleeing Felon Rule," it is unclear whether counsel sought to ask questions related to the common law rule rejected in *Garner* or to the qualified use of deadly force as quoted from *Garner* above.

<u>Testimony of Shannon Hughes</u>

The defendants next contend that the trial court erred in refusing to permit the introduction of the testimony of Shannon Hughes recorded at the criminal trial related to these proceedings. The defendants argue that Mr. Hughes was an unavailable witness at the civil proceeding as he was working out of state and failed to honor a subpoena to appear at the trial. They argue that the testimony from the criminal trial should have been admitted or the record should have been held open "so that Hughes' live testimony could be taken."

The trial court was not required to find that Mr. Hughes was unavailable pursuant to La.Code Evid. art. 804(A)[8] insofar as there was no indication as to when defense counsel knew that Mr. Hughes would not honor the subpoena and what attempts, if any, had been made to secure his testimony by other means. Additionally, even if Mr. Hughes was found to be unavailable, there is no indication that the requirements of La.Code Evid. art. 804(B)(1) or (6)[9] were met. Neither party's

---

[8] Article 804(A) provides, in pertinent part:

**Definition of unavailability.** Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:

. . . .

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

[9] Article 804(B) provides, in part:

**Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.

counsel appeared at the criminal proceeding and, again, there was no indication that alternative means of procuring Mr. Hughes' statement were used.

Presumption

The defendants also argue that the trial court erred in failing to apply an adverse presumption against an expert witness, George Armbruster, retained by the plaintiffs, but not called as a witness at trial. The trial court denied the presumption, finding that the expert testimony was cumulative. We find no error in the denial of application of the presumption.

In *Driscoll v. Stucker*, 04-0589, pp. 18-19 (La. 1/19/05), 893 So.2d 32, 47 (citations omitted), the Louisiana Supreme Court explained that:

> An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. Explaining that adverse presumption, the Fourth Circuit recently noted " '[w]hen a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and particularly within his own knowledge, and fails to go upon the witness stand, the presumption is raised and will be given effect, that the facts, as he would have them do not exist.' " This adverse presumption is referred to as the "uncalled witness" rule and applies "when 'a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence' and fails to call such witnesses." Despite the advent of modern, liberal discovery rules,

----

. . . .

**(6) Other exceptions.** In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it. If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence.

this rule remains vital, especially in cases, such as this one, in which a witness with peculiar knowledge of the material facts is not called to testify at trial.

The trial court was not required to apply this presumption as the transcript reveals that both parties had access to Mr. Armbruster's deposition. Further, Mr. Armbruster was to be admitted as an expert and, thus, he would not have offered "material facts." Finally, the trial court reviewed the deposition and found the testimony to be cumulative to other testimony heard during the plaintiffs' case. This court cannot now review that finding as the record does not contain the deposition.

For these reasons, the defendants' assignment regarding these evidentiary matters lacks merit.

*Apportionment of Fault*

The defendants next question the trial court's apportionment of only ten percent of the fault to the Mr. Francis.

Louisiana Civil Code Article 2323(A) provides:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

This provision applies to "any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine, or theory of liability, regardless of the basis of liability." La.Civ.Code art. 2323(B).

In determining the percentages, the trial court considers both the nature of the conduct of the actors and "the extent of the causal relationship between the conduct and the damages claimed." *Dupree v. City of New Orleans*, 99-3651, p. 19 (La. 8/31/00), 765 So.2d 1002, 1015. The following five factors may influence the allocation of fault:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste without proper thought.

*Id.* (citing *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985)).

An appellate court affords a trial court's apportionment of fault great deference on review. Even if the appellate court would have decided the case differently had it been the original trier of fact, the trial court's ruling must be affirmed unless it is manifestly erroneous or clearly wrong. *Dupree*, 765 So.2d 1002.

The trial court did not set forth its reasoning in apportioning the fault, ninety percent to the defendants and ten percent to Mr. Francis. Instead, the trial court merely stated that: "Additionally, the court assesses 10% comparative fault to Mr. Derrick Francis in failing to stop and respond to the commands of the police officers." We consider this determination in light of the factors set forth by the supreme court in *Dupree*.

As for the question of whether the conduct resulted from the inadvertence or involved an awareness of danger, neither party's conduct can be said to have occurred due to inadvertence. The police officers used exacting, deadly force, whereas Mr. Francis displayed dangerous and erratic behavior, fled from police, and repeatedly refused to exit his vehicle. Although the cause of Mr. Francis' behavior was not

conclusively established at trial,[10] his actions were clearly not inadvertent. However, important in consideration of this factor, as well as in the remaining factors, is the trial court's obvious initial determination that the police officers acted with intent in using lethal force *after* the threat from Mr. Francis' actions had ceased.

The second factor, consideration of how great a risk was created by the conduct, again indicates that the conduct of all parties created an atmosphere of risk in this incident. The police officers obviously put Mr. Francis' life at risk due to the decision to use deadly force. While Mr. Francis may have initially placed himself in the position of risk due to both his commission of the traffic offenses and his refusal to obey the officers' commands, the record supports a determination that any risk created by Mr. Francis had ended at the time his vehicle became lodged between the police cruiser and Officer Garrie's truck.

The third factor, the significance of what was sought by the conduct, is in favor of the defendants. Whereas it is unreasonable to find any merit to Mr. Francis' actions, the police officers' actions were ostensibly taken to stop what they perceived to be a dangerous and unfolding situation. Although the record supports a determination that they were at fault in the degree of force used, there is no indication that the officers' intent was anything other than to stop and contain the series of events.

With regard to the capacities of the actors, and while each party must again bear a portion of the responsibility, the police officers used exacting, deadly force.

---

[10] The trial court stated its finding as to Mr. Francis' behavior as follows: "The court received no explanation for this behavior except perhaps that contributing factors could be the small traces of cocaine, as well as the prescribed anti-depressant Elavil, both detected by the coroner as a result of his autopsy." And, although it was not argued by either party, nor was there evidence to suggest such a finding, the trial court further stated that: "Or perhaps Mr. Francis sustained a concussion in the first accident."

According to the trial court's ruling, they did so at a time when Mr. Francis' own deadly weapon, his vehicle, had become immobilized.

The final element of extenuating circumstances could have been, again, weighted against the defendants by the trial court. Although the police officers were responding to a rapidly unfolding situation, the trial court was free to determine that the police officers' appreciation of the situation was flawed and their response, disproportionate. While Mr. Francis may have set the series of events in motion, the record supports a view that the danger presented by these events de-escalated to a less volatile point where the degree of force used was unreasonable.

Having considered these factors, we find no manifest error in the trial court's apportionment of fault.

This assignment of error lacks merit.

*General Damages*

In their final assignment of error, the defendants assert that the $650,000.00 awarded in general damages for the wrongful death claim was excessive.

Louisiana Civil Code Article 2324.1 provides: "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." The Louisiana Supreme Court has further explained that an appellate court must accord vast discretion to a trier of fact's award of general damages and rarely disturbs such an award. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 159 (1994).

Felecia Batiste, Mr. Francis' girlfriend, testified that Mr. Francis had assumed the role of rearing the couple's young son, Dontay Francis, due to her health situation and her return to school. Dontay was ten years of age at the time of the July 2006

trial. Ms. Batiste explained that Mr. Francis and Dontay were close, with Dontay living with his father and spending approximately ninety percent of his time with Mr. Francis. She testified that, after Mr. Francis' death, Dontay had shown anger, had gained weight, and had begun having nightmares about being shot. He had been in trouble at school for possessing a BB gun.

Dontay testified that he missed his father, their conversations, and the time that they spent together. He explained that they had "a very good relationship" and that his father would take him to the movies or the mall and that his father had participated in school field trips. Dontay also testified as to the nightmares he had experienced after his father's death, including one in which he dreamed that "the police" killed him, his mother, and his sisters.

In addition to the nature of Mr. Francis' death and the impact that such a death undoubtedly had on Dontay, the above testimony supports a view that Dontay suffered greatly from his father's death. While the $650,000.00 wrongful death award is in the upper range of permissible awards, we find that it is supported by the record and not an abuse of the trial court's discretion. Accordingly, we leave the award for general damages undisturbed.

*No Right of Action*

Although the petition in this case advanced a number of theories of recovery, the trial court awarded damages for wrongful death, focusing on the damages incurred by Dontay.[11] The trial court denied the plaintiffs' claim for special damages related to funeral expenses. Neither did the trial court award damages associated with a

---

[11] The trial court's reasons for ruling reveal: "[T]he court finds that the plaintiffs have proven their case by a preponderance of the evidence, and finds defendants, Officer Daniel Boulet, Officer Marlo Foreman and the City of Rayne, liable in the wrongful death of Derrick Francis. The court hereby awards general damages in the amount of $650,000."

19

survival action pursuant to La.Civ.Code art. 2315.1. Despite the limitation of the award to damages for wrongful death, the judgment awarded general damages to *both* "The Estate of Derrick Francis and Felecia R. Batiste, as Tutrix of Dontay Francis[.]" Insofar as the judgment is entered in favor of the Estate of Derrick Francis, it is in error and requires amendment.

With regard to those who may bring a wrongful death action, Louisiana Civil Code Article 2315.2 provides:

> A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
>
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
>
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
>
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

Thus, as a surviving child, Dontay is able to recover for his own damages sustained due to the wrongful death. However, a deceased's estate is not among those listed.

Accordingly, pursuant to the court's authority under La.Code Civ.P. art. 927(B)[12] to recognize the absence of a party's right of action, we reverse the trial court's judgment insofar as it awarded general damages to the Estate of Derrick Francis. We further amend the judgment to reflect that all general damages, subject

---

[12] Article 927(B) provides, in part: "The nonjoinder of a party, or the failure to disclose a cause of action or *a right or interest in the plaintiff to institute the suit*, may be noticed by either the trial or appellate court on its own motion." (Emphasis added.)

to the reduction required due to comparative fault, are awarded to Felecia R. Batiste, as Tutrix of Dontay Francis.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court insofar as it found the defendants, the City of Rayne, Officers Marlo Foreman and Daniel Boulet, individually and in their official capacity as police officers for the City of Rayne, at fault and awarded general damages. We further affirm the quantum awarded in general damages. However, we reverse that portion of the judgment entered in favor of the Estate of Derrick Francis. The judgment is amended to award general damages solely to Felecia R. Batiste, as Tutrix of Dontay Francis. This award is subject to the reduction required due to the finding of comparative fault. All costs of this proceeding are assessed to the defendants, the City of Rayne, Officers Marlo Foreman and Daniel Boulet, individually and in their official capacity as police officers for the City of Rayne.

**AFFIRMED AS AMENDED.**