STATE OF LOUISIANA IN THE INTEREST OF J.M.
No. 2008 KJ 0305.
Court of Appeals of Louisiana, First Circuit.
June 6, 2008.
H. GREGORY BRIESE, CITY PROSECUTOR BOGALUSA, LA. KATHRYN LANDRY SPECIAL APPEALS COUNSEL BATON ROUGE, LA., Counsel for Appellee, State of Louisiana.
KATHERINE M. FRANKS ABITA SPRINGS, La., Counsel for Defendant/Appellant, J.M.
Before: CARTER, C.J, PETTIGREW and WELCH, JJ.
CARTER, C.J.
The juvenile, J.M., was charged by juvenile petition with committing the delinquent act of aggravated rape, in violation of La. R.S. 14:42. He denied the allegation of the petition, and following an adjudication proceeding, was adjudicated a delinquent child for the delinquent act charged. The juvenile was committed to the Department of Public Safety and Corrections to be confined in secure placement until he attains the age of twenty-one years. The juvenile now appeals, designating the following assignments of error:
1. The juvenile court erred in entering a judgment of disposition that incarcerates J.M. until his twenty-first birthday without benefits when there was no proof offered as to the date of the offense so as to establish that J.M. was fourteen years old at the time of the commission of the delinquent act.
2. The juvenile court erred in not conducting a disposition hearing when it was not established that J.M. was fourteen years old at the time of the commission of the delinquent act.
3. The "juvenile life" disposition was excessive if mandatory, and if not mandatory, it was clearly not the least restrictive disposition authorized by the Children's Code for a juvenile never previously involved in the juvenile justice system.
4. The juvenile court exceeded the role of fact finder when it consistently interjected itself into the proceedings and asked questions on behalf of the prosecutor. Such lack of impartiality violates the Code of Judicial Conduct and is a structural error in the proceedings that invalidates the adjudication.
5(a). Defense counsel was ineffective for failing to object to the juvenile court's consistent interjection into the hearing by asking questions intended, not to clarify, but to elicit testimony on behalf of the prosecution, and in failing to complain of the juvenile court's lack of impartiality.
5(b). Defense counsel was ineffective for failing to ask for a disposition hearing when the evidence adduced at the adjudication proceeding did not establish the date of the delinquent act so as to determine that J.M. was fourteen years old, since the basis for the disposition mandates that the juvenile must be fourteen years or older at the time of the commission of the delinquent act.
5(c). Defense counsel was ineffective for failing to argue the excessiveness of the disposition, whether mandatory or not, of a juvenile who has no history of delinquency adjudications, no school suspensions or expulsions, and no involvement with the juvenile justice system.
We affirm the adjudication and disposition.

FACTS
The victim, M.L., was born on May 3, 2000. In 2005, MX., his sister, L.L., and their father, Anthony, lived in Bogalusa at the house of a friend, Anna. In September 2005, following Hurricane Katrina, J.M. (the juvenile) moved into Anna's house,[1] along with his brother and his stepfather, Kenneth. M.L. and J.M. were cousins. J.M. lived at Anna's house for only a brief time, from September to October 2005. When they first lived together, M.L. was five years old, and J.M. was thirteen years old. J.M. and his family returned to Anna's house near the end of May and stayed through early June 2006. J.M., who was born on April 19, 1992, was fourteen years old the second time he lived with M.L.
In May 2007, Anthony's children were removed from Anna's house and placed in a foster home because of allegations that Anthony had physically abused L.L. Both children underwent therapy. During therapy with Lisa Tadlock, a licensed clinical social worker, M.L. disclosed that J.M. had anally raped him. M.L. explained that he and J.M. were in M.L.'s bedroom and that J.M. put conditioner on his (J.M.'s) penis before raping him.[2] Lisa reported to OCS what M.L. told her.
Tommie Sorrell, a Lieutenant in Investigations with the Bogalusa Police Department, sat in on M.L.'s next therapy session with Lisa. M.L. again disclosed that J.M. had raped him. On that same day, Lieutenant Sorrell took M.L. to the Children's Advocacy Center (CAC) in Covington, where M.L. was interviewed by JoBeth Rickels, a forensic interviewer. The CAC interview was taped, and the tape was played for the juvenile court at the adjudication proceeding.
J.M. was taken into custody on June 14, 2007. Items seized from J.M.'s bedroom that same date included Playboy magazines from under his mattress, and a jar of Vaseline and two bottles of shampoo from under his bed. J.M. testified at the adjudication proceeding and denied that he sexually abused M.L.

ASSIGNMENTS OF ERROR NOS. 1,2 & 3
In these three assignments of error, J.M. argues that the juvenile court erred in failing to conduct a disposition hearing and in entering a judgment of disposition committing him to the Department of Public Safety and Corrections until his twenty-first birthday despite the fact that no proof was offered at the adjudication proceeding to establish that he was fourteen years old at the time of the commission of the aggravated rape. J.M. further argues that the "juvenile life" disposition, if mandatory, was excessive, and if not mandatory, it clearly was not the least restrictive disposition authorized by the Children's Code for a juvenile never previously involved in the juvenile justice system.
Immediately following J.M.'s adjudication as a delinquent for the offense of aggravated rape, defense counsel agreed to proceed to the judgment of disposition. Kevin Culivan, a juvenile probation officer, recommended that, pursuant to La. Ch. Code art. 897.1, the juvenile be committed to custody until his twenty-first birthday. The juvenile court adopted the recommendation. To be committed under Article 897.1 A, the juvenile must have been at least fourteen years old at the time of the commission of the delinquent act. Specifically, Article 897.1 A provides:
After adjudication of a felony-grade delinquent act based upon a violation of . . . R.S. 14:42, aggravated rape . . . the court shall commit the child who is fourteen years or older at the time of the commission of the offense to the custody of the Department of Public Safety and Corrections to be confined in secure placement until the child attains the age of twenty-one years without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence.
The petition alleged that on or about January 2006 through April 30, 2006, J.M. committed the delinquent act of aggravated rape. The testimony and evidence established that M.L. was raped in Anna's house by J.M. during a time period when J.M. was living at Anna's house. J.M. and M.L. were both living in Anna's house in September and October 2005 and from the end of May to early June 2006. J.M.'s date of birth is April 19, 1992; thus, J.M. was fourteen years old in May and June 2006.
The evidence was sufficient to support the juvenile court's factual determination that J.M. committed aggravated rape when he was fourteen years old. As such, the juvenile court did not err in entering a judgment of disposition under the mandatory provision of Article 897.1 A, committing J.M. until his twenty-first birthday. Because the disposition was mandatory under Article 897.1 A, a disposition hearing would have been futile, and the failure to conduct one would constitute harmless error. Regardless of the evidence that might have been presented at a disposition hearing, the juvenile court had no discretion in the disposition. See State in the Interest of CD., 95-160, p. 6 (La. App. 5 Cir. 6/28/95), 658 So.2d 39, 42. Moreover, defense counsel in the instant matter agreed to proceed immediately to the judgment of disposition. See La. Ch. Code art. 893 A.
J.M. argues in the alternative that the juvenile life disposition, if mandatory, was excessive. After adjudicating a child to be a delinquent, a court is required to impose the least restrictive disposition authorized by Articles 897 through 900 of the Children's Code that the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. La. Ch. Code art. 90IB; State in the Interest of J.W., 95-1131, p. 3 (La. App. 1 Cir. 2/23/96), 669 So.2d 584, 586, writ denied, 96-0689 (La. 4/26/96), 672 So.2d 911. However, because the instant disposition was mandatory under Article 897.1 A, the general disposition guidelines set forth in La. Ch. Code art. 901A-D were inapplicable. La. Ch. Code art. 90IE.
Moreover, the record clearly supports the disposition imposed. A very young boy was raped in his own bedroom by his older cousin. The disposition is not excessive.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NQS. 4 & 5(a)
In these assignments of error, J.M. argues that the juvenile court exceeded the role of fact finder when it consistently interjected itself into the proceedings and asked questions on behalf of the prosecutor. J.M. further argues that defense counsel was ineffective for failing to object to these interjections by the juvenile court.
J.M. points out several instances during the adjudication proceeding where the juvenile court asked questions of the witnesses to clarify an issue or a timeframe of a particular event.[3] J.M. asserts the juvenile court's questioning of witnesses was structural error and that such conduct demonstrated its bias in favor of the prosecution. We do not agree.
A court may question witnesses whether called by itself or by a party. La. Code Evid. art. 614B. Of more significance, however, is the nature of juvenile proceedings. They are quasi-criminal, non-jury, ideally intimate, informal, protective proceedings, wherein the only fact finder is the juvenile court. See State ex rel. D.J., 2001-2149, pp. 4-6 (La. 5/14/02), 817 So.2d 26, 29-30; La. Ch. Code arts. 808, 882. As juvenile proceedings do not have juries, there is no danger in the juvenile court commenting upon the facts of the case or recapitulating the evidence in the presence of the jury. See Estate of Francis v. City of Rayne, 2007-359, p. 10 (La. App. 3d Cir. 10/3/07), 966 So.2d 1105, 1112, writ denied, 2007-2119 (La. 2/15/08), 976 So.2d 176; La. Code Crim. P. art. 772. Because juvenile law is a hybrid of civil and criminal law, the juvenile court operates differently from the criminal court's procedure. The primary aim of the juvenile court is to effectuate whatever action would be in the best interest of the child or children involved. In furtherance of this objective, the court is given greater leeway to accomplish its goals. See State v. Thomas, 579 So.2d 1086, 1087 (La. App. 4th Cir.), writ denied, 586 So.2d 535 (La. 1991).
It is clear from the record in the instant matter that the juvenile court felt certain witnesses warranted further questioning beyond what was asked of them by the prosecutor and defense counsel. Accordingly, the juvenile court had witnesses elaborate on or more fully explain a particular subject or issue. We find such questioning was not unreasonable. The juvenile court did not exceed its fact finding role.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the test for evaluating the competence of trial counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. State v. Robinson, 471 So.2d 1035, 1038-1039 (La. App. IstCir.), writ denied, 476 So.2d 350 (La. 1985).
Since we found the juvenile court did not err in questioning witnesses at the adjudication proceeding, J.M. can show neither deficient performance nor sufficient prejudice. Accordingly, his claim of ineffective assistance of counsel must fall.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS, 5(b) and 5(c)
J.M. argues that defense counsel was ineffective for failing to ask for a disposition hearing when the evidence adduced at the adjudication proceeding did not establish the date of the delinquent act so as to determine he was fourteen years old. J.M. further argues that counsel was ineffective for failing to argue the excessiveness of the disposition, whether mandatory or not, of a juvenile who has no history of delinquency adjudications, no school suspensions or expulsions, and no involvement with the juvenile justice system,
The evidence established J.M.'s age at the time he committed the aggravated rape. The disposition was mandatory and, as we found, not excessive. Accordingly, defense counsel's waiver of the disposition hearing, as well as his decision to not argue excessiveness, did not constitute deficient performance. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Robinson, 471 So.2d at 1038-1039. Accordingly, these claims of ineffective assistance of counsel must fall.
These assignments of error are without merit.
ADJUDICATION AND DISPOSITION AFFIRMED.
PETTIGREW, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.
PETTIGREW, J., concurring in part, and dissenting in part.
I respectfully concur with the majority in affirming the adjudication in this proceeding; however, I dissent with the disposition, for the following reasons.
To be committed under La. Ch. Code art. 897.1(A), the juvenile must have been at least fourteen years old at the time of the commission of the alleged delinquent act. The juvenile's age at the time he committed the alleged aggravated rape was not established at the adjudication proceeding. It is my humble opinion the appropriate disposition would fall under La. Children's Code art. 897. Therefore, I would vacate the disposition of juvenile life and remand to the trial court for further disposition pursuant to Article 897.
NOTES
[1] Anna's property consisted of a main house and a small apartment in back of the main house. Kenneth and his sons lived in the apartment house.
[2] Lisa Tadlock testified at the adjudication proceeding that although M.L. revealed in therapy that he had been raped by the juvenile, M.L. never provided the exact date or dates of when the rape occurred.
[3] Following is an instance of the juvenile court asking Lisa Tadlock questions:

The Court: Okay. Well, let's start with consistent. Do you believe [M.L.] was consistent in his statements to you?
The Witness: In every statement he made?
The Court: Uh-huh (indicating an affirmative response).
The Witness: Through ~ throughout the time he was 
The Court: Yes.
The Witness:  in therapy?
The Court: Uh-huh (indicating an affirmative response).
The Witness: Yes, I do.
The Court: Okay.
The Court: Wait. Wait, Miss Tadlock. You described [M.L.'s] disclosures or his statements as consistent?
The Witness: Yes, sir,
The Court: Did you also describe them as reliable?
The Witness: Yes, sir,
The Court: Do you believe the allegation  did you believe the allegation regarding the events involving [M.L.] in the bedroom and the conditioner?
The Witness: Yes, sir, I did.
After Anna was examined and cross-examined, the juvenile court asked her some questions. Following is a portion of that questioning wherein the juvenile court attempts to ascertain specifics on who lived with Anna and when:
The Court: Okay. And the house on Avenue G, you own that home?
The Witness: Yes.
The Court: And [Anthony] and his children lived with you for how long? The
Witness: Huh?
The Court: Did [Anthony] stay in that residence with you? The
Witness: Yes.
The Court: When did they move in your residence?
The Witness: Urn, 2005.
The Court: And they stayed there until when?
The Witness: They still live there.
The Court: They're still at that address? The Witness: Yes.
The Court: Okay. All right. And then you describe it as a main home, and then there's an apartment? The Witness: Yes.
The Court: And in the main home, who slept where?
The Witness: Okay, In the  the kids slept in one room, I slept in another, and [Anthonyj slept in another. It's a three-bedroom house.