Judgment rendered February 25, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,762-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHEREIS PETROVICH WILSON                    Plaintiff-Appellant

versus

CHESTER GOODWIN WILSON                      Defendant-Appellee

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 54,231

Honorable Thomas W. Rogers, Judge

* * * * *

CHEREIS PETROVICH WILSON                    In Proper Person


KAY STOTHART CELLES                         Counsel for Appellee


* * * * *

Before STONE, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

This matter involves a long-lasting litigation arising from a divorce and child custody proceeding, wherein the husband and wife filed for divorce in 2010, which terminated the community property regime, with a judgment of divorce being rendered in 2013. The parties, however, did not institute litigation to judicially partition their community property until 2022. After appointment of a Special Master, including a hearing where testimony and evidence were presented, the Special Master found that the wife owed the husband an equalizing payment of $63,104.17. Both parties objected to the Special Master's recommendation and appeared before the district court. The district court adopted[1] the Special Master's recommendation. The wife now appeals the trial court's ruling. For the reasons set forth herein, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

Chereis and Chester Wilson were married on May 24, 1998, and had two children. During the course of the marriage, Chereis and Chester established a community property regime that included ownership and mortgages on two properties, the family home located at 404 Forest Circle (the "Forest Circle home") and a rental house at 1912 Mimosa Drive (the "Mimosa Drive home"). Both homes are located in Ruston, Louisiana. Chereis filed for divorce on March 23, 2010, and the community property regime existing between the two of them terminated on this date. A judgment of divorce was granted on March 14, 2013.

---

[1] The only alterations made were the concessions made by the husband during the hearing.

After years of litigation regarding child custody, child support, and spousal support, in 2020, Chester filed a petition for judicial partition of community property and for reimbursement. A Special Master was appointed to determine the partition of the community assets and debts and any reimbursement claims by the parties, and both Chester and Chereis submitted detailed descriptive lists to the Special Master.

The Special Master conducted a hearing on June 9, 2021, and both Chereis and Chester were represented by their respective counsel. Both counsel were later acknowledged by the trial court to be longstanding professional members of the bar. The Special Master acknowledged the parties' stipulations as to certain issues, including various reimbursement claims, and heard testimony regarding the remaining contested reimbursement claims.

Joe Raymond Peace testified before the Special Master that he is a real estate agent with Lincoln Realty and was accepted as an expert witness by the court. He evaluated the rental value of Mimosa Drive home, stating that as a three bedroom home, it would be valued at $350-400 per bedroom.

Chester Wilson testified that after the termination of the community regime, he made a number of payments on community debt for which he is seeking reimbursement. He described his discovery, after the filing for divorce, of an American Express card in Chereis's name with a balance of $11,156.81 of which he was unaware. Chereis paid off the American Express card and a Bank of America card that were only in her name by transferring the balances to a joint credit card with Chester, and he assumed payments on the joint card. She made that transfer without talking to him

first, and he would not have agreed to the transfer because the joint card had a higher interest rate. The transfer of these balances maxed out the spending limit on their joint card. They also had a joint Target card with a balance of $5,888 as of the date of filing, and Chester paid off that card.

Account statements showed that Chereis continued to make charges on the Target account after the petition for divorce. When Chester transferred the Target account balance over to a lower interest Discovery account, the total on the card was $10,447. Chester has since paid off that card. There was a Bancorp South credit card with a $6,345.96 balance as of the date of petition. Between March 23 and April 7, 2010, there were charges of $2,690.47, including overdraft fees. He paid off the card, including community debts and additional debts that were charged on the Bancorp South card that were made until he cancelled the card in August of that year. At the time of the petition for divorce, there was a Guarantee Bank card with a balance of $10,471.06. He has paid off the card, including additional balances. Chester listed on his detailed descriptive list the payments on the three mortgages, including the Mimosa Drive house, the Forest Circle house, and the line of credit on the Mimosa house. They sold the Forest Circle home on August 1, 2011, and Chester moved out of the Mimosa Drive home so Chereis and the children could move in.

Chester agreed that he paid the minimum required payments on the credit cards, which resulted in an increase in the interest owed on the cards. After the divorce filing, Chereis did not make any payments on the credit cards. Chereis testified that she had $13,029.45 in student loans during their marriage.

3

After considering the testimony and evidence, the Special Master ruled that reimbursement claims totaling $16,044.55 would be awarded to Chereis and reimbursement claims totaling $28,781.06 would be awarded to Chester. Chereis's rental claim for $7,612.50 was granted, but Chester's rental claim for $61,950 was denied on equitable grounds. Finally, the Special Master recommended that an equalizing payment of $63,104.17 was owed from Chereis to Chester.

Both parties filed formal objections to the Special Master's report and recommendation. A hearing was held by the trial court on November 17, 2022. Chester was represented by counsel, but Chereis represented herself at the hearing. Chester withdrew his objections during the hearing, and Chereis's objection to the award of $687.50 for air conditioning repairs was conceded. After considering the parties' arguments, the trial court adopted the Special Master's recommendation, with the only revisions reflecting Chester's concessions. Chereis now appeals this judgment and, continuing to represent herself, asserts seven assignments of error.

## DISCUSSION

Chereis asserts seven assignments of error. For the purposes of clarity and to avoid unnecessary duplication, we will address similar assignments of error together.

**First Assignment of Error:** The trial court erred in relying on a photocopy of the "special master conference agreement" with nonvisible highlights and post-signature edits without addressing appellant's objections. This led to an erroneous financial judgment. The lower court's final judgment was based on flawed data and representation, overestimating Appellant's payment obligation.

Chereis argues that the trial court improperly relied on a photocopy of the "special master conference agreement," which led to an erroneous financial judgment. The record reflects that the parties entered into a series of stipulations prior to the Special Master hearing, and those stipulations were enumerated in the Special Master conference agreement. At the time the Special Master conference agreement was created, Chereis was represented by counsel, and those stipulations were negotiated and agreed upon by the parties prior to the Special Master hearing. Moreover, when Chereis appeared before the trial court, she presented argument that she did not agree with the prior stipulations and the payment obligation she believed she owed.

The record reflects that the trial court took note of the entire record and evidence admitted in this matter, including evidence submitted to the Special Master. We cannot say that the Special Master conference agreement, which was an exhibit included in the record before the trial court, was erroneously considered by the trial court or that its inclusion was an abuse of discretion. This assignment of error is without merit.

Next, we address Chereis' second and fifth assignments of error.

**Second Assignment of Error: Chereis's counsel failed to introduce relevant evidence, allowed inaccuracies in testimony and documentation, and failed to challenge opposing claims during the hearing before the Special Master.**

**Fifth Assignment of Error: The trial court erred in violating Chereis's due process right by denying her the opportunity to dispute or cross-examine credit card evidence introduced mid-trial. She was not allowed by her own counsel to raise objections, and she was told by counsel to "STOP" whenever she spoke to counsel.**

In her second and fifth assignments of error, Chereis argues that her rights have been violated by the lack of performance by her counsel during

5

the Special Master hearing. She contends that her counsel was ineffective and did not allow her the opportunity to dispute or cross-examine credit card evidence.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. However, a civil litigant has no constitutional right to effective assistance of counsel. *Ford Motor Credit Co. v. George*, 36,893 (La. App. 2 Cir. 3/5/03), 839 So. 2d 1042; *Smith v. Robertson*, 21-0708 (La. App. 1 Cir. 3/3/22), 341 So. 3d 608; *Dawson v. Falgout*, 16-373 (La. App. 5 Cir. 12/21/16), 215 So. 3d 373. The inadequacy of an attorney in a civil suit is not enough to evoke constitutional concern. *Murray v. Windmann*, 18-530 (La. App. 5 Cir. 5/29/19), 274 So. 3d 787.

As a preliminary matter, a review of the record in this case indicates that Chereis's attorney did in fact submit evidence, make objections, and otherwise appeared to properly advise and represent her client. The district court noted on the record that her counsel is a well-respected and experienced member of the bar. If a civil litigant is convinced their attorney provided inadequate services, their sole recourse is a legal malpractice action against the attorney. The law is clear that civil litigants do not have a constitutional right to effective assistance of counsel. This assignment of error is without merit.

Finally, we will address Chereis's third, fourth, sixth, and seventh assignments of error.

**Third Assignment of Error: The special master failed to consider critical testimony and complete financial evidence. The special master's**

6

**reimbursement calculations were erroneous by $47,477.19, which led to the final judgment incorrectly requiring appellant to pay $62,416.67, rather than $26,241.39.**

**Fourth Assignment of Error: Appellant was improperly assigned disproportionate post-divorce debt, medical debt that was court ordered to be covered at 85% by appellee, and interest based on unsupported, unreviewed charges, and improper allocation of unpaid alimony.**

**Sixth Assignment of Error: The trial court erred because mortgage payments for appellant's 50% of the Forest Circle house totaling $15,287.48 should have been applied as interim spousal support under prior court orders and not be a reimbursement claim for appellee.**

**Seventh Assignment of Error: Appellee withheld court ordered support for the purposes of paying the appellant's portion of the joint credit card debt, which he did not do. Appellee had only made the minimum payments and later demanded that appellant repay over 10 years of accrued interest. Appellee claimed complete payment of alimony on his federal income tax the two years that he withheld the alimony from appellant, further indicating his intent that the withheld alimony was to pay appellant's portion of the credit card bills.**

In valuing and allocating assets and liabilities to partition community property, a trial court is not required to accept at face value a spouse's valuation of assets, debts, or claims against the community. *Tanner v. Patterson*, 56,027 (La. App. 2 Cir. 2/26/25), 408 So. 3d 346, *writ denied*, 25-00378 (La. 6/3/25), 410 So. 3d 791. Absent manifest error, a trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in order to partition community property may not be set aside on appeal. *Id.* A trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. *Mason v. Mason*, 40,804 (La. App. 2 Cir. 4/19/06), 927 So. 2d 1235, *writ denied*, 06-1524 (La. 10/13/06), 939 So. 2d 366. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of assets

between spouses. A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error, or unless it is clearly wrong. *Id.*

The court shall determine the community assets and liabilities; the valuation of assets shall be determined at a trial on the merits. La. R.S. 9:2801(A)(2). The court shall value the assets as of the time of the trial on the merits, determine the liabilities, and adjudicate the claims of the parties. La. R.S. 9:2801(A)(4)(a). The court shall divide the community assets and liabilities so each spouse receives property of an equal value. La. R.S. 9:2801(A)(4)(b). The court shall allocate or assign to the respective spouses all of the community assets and liabilities. La. R.S. 9:2801(A)(4)(c). If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. La. C.C. art. 2365.

Louisiana's Special Master statute was adopted in 1997 and modeled after the corresponding federal rule, Rule 53 of the Federal Rules of Civil Procedure. *Veazey v. Johnson*, 21-0639 (La. App. 4 Cir. 2/15/23), 358 So. 3d 186. The statute authorizes a court, with the consent of the litigants, to refer matters to a Special Master, who may make findings of fact and conclusions of law on the referred matters. La. R.S. 13:4165(A)-(C). Of paramount significance to the federal and Louisiana statutes are guarantees of notice and an opportunity to be heard on the issues referred to the Special Master. *Veazey, supra.*

In the hearing before the Special Master, both Chereis and Chester were represented by counsel and presented arguments and evidence. Both

8

Chereis and Chester testified before the Special Master regarding their community assets and debts. The record includes several stipulations made between the parties, including the stipulation that Chester made post-termination payments, using his separate funds, on the mortgages for both houses. After Chester and Chereis both objected to portions of the Special Master's findings, they appeared before the district court to present their arguments, and although Chereis was not represented by counsel during this hearing, the district court heard her arguments.

The record does not reflect any abuse in discretion by the district court in its adoption of the Special Master's recommendation, with the one concession provided by Chester during the hearing. The record reveals that the Special Master took testimony, reviewed the evidence, and heard arguments all related to the community property between Chester and Chereis. The district court reviewed the record and the Special Master's recommendation and heard further argument by the parties. As noted above, the district court is afforded a great deal of deference to its adjudication of the partition of the community. For this reason, Chereis's assignments of error are without merit.

## CONCLUSION

For the reasons set forth above, the trial court's judgment is affirmed. Costs of this appeal are assessed to Chereis Wilson.

**AFFIRMED.**